**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANN J.,<br><br>Claimant,<br><br>v.<br><br>FRANK J. BISIGNANO,<br>Commissioner of Social Security,<br><br>Respondent. | No. 24 C 8342<br><br>Magistrate Judge Karyn L. Bass Ehler |

**MEMORANDUM OPINION AND ORDER**

Ann J.[1] ("Claimant") appeals the decision of the Commissioner of Social Security[2] ("Commissioner"), denying her application for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court affirms the Commissioner's decision.[3]

**Background**

On June 16, 2021, Claimant applied for disability insurance benefits alleging a disability onset date of October 29, 2020. (R.17). Her application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.17). After conducting a hearing at which Claimant and a vocational expert testified, the ALJ denied Claimant's applications for benefits and concluded she was not disabled under the Social Security Act. (R.17-33). Claimant appealed to the Appeals Council, which denied review. (R.1-4).

---

[1] In accordance with Northern District of Illinois Local Rule 8.1, the Court refers to Claimant only by her first name and the first initial of her last name.

[2] Frank J. Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted as the named defendant in this case.

[3] The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 5].

Accordingly, the ALJ's decision is the final decision of the Commissioner, which is reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in substantial gainful activity between October 29, 2020 and her date last insured, June 30, 2023. (R.19). At step two, the ALJ found that Claimant has severe impairments of "obesity; Hashimoto's thyroiditis carpel tunnel syndrome, status post right release; irritable bowel syndrome; history of asthma with tobacco use; spinal disorder; headaches; mood disorder; anxiety; posttraumatic stress disorder; and attention deficit hyperactivity disorder." (R.20). At step three,

the ALJ found that Claimant does not have an impairment or combination of impairments that meets or equals a listed impairment. (R.20-23.) At step four, the ALJ determined:

> the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds, no more than occasionally climb ramps or stairs, balance, stoop, crouch, kneel, and crawl; and no more than frequently reach, handle objects (gross manipulation) and finger (fine manipulation). The claimant had to avoid concentrated exposure to respiratory irritants, such as fumes, odors, dusts and gases; all exposure to dangerous moving machinery; and all exposure to unprotected heights. The claimant was limited to simple and routine tasks. She could not perform work requiring a specific production rate such as assembly line work or work that required hourly quotes. Claimant was limited to only occasional interaction with the public in the work setting and with no work involving tandem tasks with others. The claimant was limited to only occasional interaction with co-workers that may be necessary for instruction, supervision or completion of work tasks.

(R.24-R.25). The ALJ concluded there were jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of mail clerk, checker, and inspector, and therefore found Claimant is not disabled. (R.31-R.32.)

The Court reviews the ALJ's decision deferentially and must affirm the decision if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Seventh Circuit has concluded that an ALJ's decision is "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Though the standard of review is deferential, the court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even if there is adequate evidence in the record to support an ALJ's decision, that decision cannot be upheld if the ALJ does not "build an accurate

and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Warnell*, 97 F.4th at 1053-54.

## Analysis

Claimant argues the ALJ erred by failing to consider the effects of Claimant's mental and physical impairments in combination, including the effects of Claimant's migraine headaches, in crafting the RFC; by failing to account for Claimant's concentrating, persisting, and maintaining pace ("CPP") limitations in the RFC; and by not explaining or supporting the rejection of Claimant's treating source opinions that she was precluded from full-time work as a result of her combined impairments. Motion [ECF No. 18]. The Court addresses each of these claimed errors in turn below.

### A. The ALJ Properly Considered the Combined Effects of Claimant's Mental and Physical Impairments.

Claimant first argues the ALJ failed to consider the effects of Claimant's mental and physical impairments in combination. Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 18] ("Motion") at 8-10. The Court disagrees. The ALJ noted Claimant's testimony at the hearing that a combination of her mental and physical impairments would cause her to go off task but concluded the Claimant's testimony about the intensity, persistence and limiting effects of her symptoms was not entirely consistent with the medical evidence and that "the evidence demonstrates that the claimant's impairments did not preclude her from working entirely." (R.24-25). Although the ALJ organized his opinion to first consider Claimant's physical impairments and then her mental impairments, the ALJ also included both physical and mental limitations in the RFC and explained the basis for those limitations. (R.25-29). The ALJ also expressly referenced the combined effect of Claimant's physical pain on her mental state several times in the opinion. (*See* R.30 (explaining why he did not find persuasive

treating physician opinions including that Claimant's mid back pain constantly interfered with Claimant's ability to pay attention and concentrate); R.28 (noting Claimant reported at visit in October 2021 that new Adderall dosage helped clear brain fog and that she had less pain and felt like her brain was healing with the physical pain)). Based on a holistic reading of the ALJ's opinion, the Court concludes the ALJ did consider the combined effects of Claimant's physical and mental impairments in crafting the RFC.

Claimant also specifically argues the ALJ failed to address the combined effect of her migraine headaches in crafting the RFC, suggesting the ALJ should have addressed how such headaches could impact Claimant's capacity to "sustain the on-task requirements of full-time work." Motion [ECF No. 18] at 10. The ALJ, however, expressly considered record evidence of Claimant's migraines, noting that she was seen in April 2021 for migraines, which Claimant reported had begun in March 2018 after a head trauma, but were now reported to be "a lot less" with headaches occurring about 2 times per month. (R.25). In addition, the ALJ noted that in July 2021, Claimant reported that her migraines were controlled with medication and glasses and "the pain was 'gone'." (*Id.*) *See also* R.27 ("July 2021 treatment records note the claimant's migraines were stable.")). Although Claimant asserts the reduction of headaches to twice a month in April 2021 was "a temporary improvement," Motion [ECF No. 18] at 10, pointing to her hearing testimony that she could have five to seven headaches a month that lasted a few hours, Claimant did not identify any medical records documenting an increase in the frequency of headaches after mid-2021. Nor did Claimant's Reply respond to the Commissioner's argument that the ALJ relied on the July 2021 evidence that Claimant's headaches were controlled with treatment. *See* Plaintiff's Reply Brief [ECF No. 23]. The ALJ described Claimant's testimony about more frequent headaches during the hearing as well as her testimony that the combined effects of her impairments

would cause her to go off task, (R.24-25), but the Court finds it is reasonable to infer from the ALJ's discussion of the record evidence related to migraines that the ALJ concluded Claimant's testimony about headaches at the hearing was not supported by the record evidence showing her headaches had been adequately controlled with treatment. (R.27 (concluding "more restrictive findings are not supported by the evidence" including that in April 2021 Claimant's migraines were "noted to occur a lot less . . . about 2 times per month" and in July 2021 the migraines were "controlled with propranolol and glasses" and that "treatment records note claimant's migraines were stable.")). Based on the unrebutted evidence that Claimant's migraines were controlled with treatment that was discussed in the ALJ's opinion, the Court concludes the ALJ did not err in his consideration of Claimant's migraines.

In addition, although Claimant's arguments regarding the ALJ's purported failure to consider the combined effects of her mental and physical impairments suggests that she believes additional limitations should have been included in the RFC, Claimant does not identify any specific additional limitations that she contends were warranted in the RFC or provide evidence from the record to support that claim. "It is not enough to criticize the ALJ's decision about [her] functional capacity to work. [Claimant] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). In the Court's view, the ALJ provided the requisite logical bridge from the evidence to his conclusions. *Warnell*, 97 F.4th at 1054. The Court can discern the ALJ's rationale for both the physical and mental limitations he included in his opinion. The Seventh Circuit has explained all that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the reviewing court] to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97

F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). Claimant's argument boils down to an invitation to re-weigh evidence that was expressly considered by the ALJ rather than a circumstance where the Court is unable to discern the ALJ's reasoning for the specific limitations included in the RFC. For all these reasons, the Court concludes the ALJ did consider Claimant's impairments together in combination to craft the RFC.

**B. The ALJ Accounted for Claimant's CPP Limitations in the RFC.**

Claimant also argues the ALJ erred by failing to account for her concentrating, persisting, and maintaining pace limitations in the RFC. Motion [ECF No. 18] at 10-14. Claimant says "restricting Plaintiff to unskilled work with limited interactions does not fully accommodate her deficits in mental functioning within the context of full-time work." Motion [ECF No. 18] at 13. The ALJ did not merely limit Claimant to unskilled work but rather also included additional limitations in the RFC as to the complexity of work tasks as well as the speed at which Claimant would be expected to complete tasks during the workday. (R.29 ("To account for moderate limitations in concentrating, persisting, or maintaining pace, the undersigned provided the claimant was limited to simple and routine tasks and could not perform work requiring a specific production rate such as assembly line work or work that required hourly quotas.")). The ALJ also included additional mental limitations as to Claimant's interactions with others in the RFC, which Claimant does not acknowledge when arguing that restrictions on interactions do not alone accommodate her CPP limitations. Claimant focuses on assertions about the efficacy of each of the RFC mental limitations in isolation rather than acknowledging the combination of mental limitations the ALJ included in the RFC. For that reason, the case law cited by Claimant, which addresses instances where ALJs failed to include tailored mental restrictions in the RFC to accommodate CPP limitations and instead merely restricted claimants to simple, routine tasks and unskilled work, does not support her position. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (affirming

ALJ's decision because "ALJ did not take any of the shortcuts on Martin's CPP limitations that we have found problematic in other cases. To the contrary, the ALJ tailored Martin's RFC to her CPP limitations without assuming that restricting her to unskilled work would account for her mental health impairments."). Moreover, Claimant again does not identify the additional mental limitations that she contends were warranted by the record in this case, including specifically with respect to CPP. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("even if the ALJ's RFC assessment were flawed, any error was harmless"; "[i]t is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

Claimant suggests the ALJ's determination that she only had moderate limitations in CPP at Step Three was "at best, tenuous," Motion [ECF No. 18] at 11, but does not directly challenge the ALJ's Step Three findings as to her functional abilities. In addition, although Claimant takes issue with the ALJ's consideration of her ability to engage in certain activities at Step Three, Claimant does not address the ALJ's consideration of her ability to work full-time in a semi-skilled job (as of the time of the hearing) in analyzing whether additional limitations were warranted in the RFC. Moreover, as Claimant acknowledges, the ALJ also found persuasive the initial and reconsideration opinions of the state agency psychological consultants which found Claimant had moderate limitations in CPP and in interacting with others, and only mild limitations in the other functional areas. (R.29-30). Claimant does not address the ALJ's reliance on the consultants' opinions.

The ALJ explained why additional restrictions were not supported by the record including both Claimant's medical history as well as her ability to engage in daily activities and, at the time

of the hearing, maintain a full-time job working from home:

> [T]he claimant's mental status examinations have generally been within normal limits including a neuropsychological examination in February 2023 (Ex. B35F/85, 89). Her treatment has been conservative treatment including therapy and medication management without psychiatric hospitalizations. The claimant reported some success with medication and even reported being stable in November 2022 (Ex. B26F/4, 15, 19; B16F/4; B39F/2, 15).
>
> Additionally, the claimant's activities of daily living reflect a greater ability to function. For example, she currently works in an SVP 4, semi-skilled job as an order clerk (DOT No.: 249.362-026). She reported being able to draw on her Ipad, read, and sell items on the internet (Ex. B26F/16). In March 2022, despite reporting some feelings of anxiety at work, she reported that she was happy with her life due to her current job and consistency and routine it provides her (Ex. B26F/28). As such, the record lacks evidence demonstrating that, from a mental standpoint, the claimant would have been unable to sustain work under the parameters described above.

(R.29). Claimant takes issue with the ALJ's description of her mental examinations as generally within normal limits, saying such a characterization is "false." Motion [ECF No. 18] at 13. The Court disagrees, however, with Claimant's position that the ALJ improperly cherry-picked evidence or ignored whole lines of evidence in his opinion. *Id.* at 13-14. The ALJ provided a detailed summary of Claimant's mental health record summarizing normal and abnormal symptoms and results. (R.27-29). Although Claimant may characterize these examinations differently, the ALJ adequately supported his conclusion that the examinations were "generally within normal limits." (R.29). Similarly, while Claimant criticizes the ALJ for considering evidence of normal functioning at examinations, citing case law that examination findings only address functional abilities during a brief period of time and do not reflect performance during a full-time job, that does not mean the ALJ was not entitled to consider such findings from examinations in assessing the scope of Claimant's functional restrictions. To reverse the ALJ's decision, the Claimant must do more than merely criticize the ALJ's conclusions and "must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support

in the record." *See Morales*, 103 F.4th at 470. To that end, although Claimant focuses on the abnormal aspects of her mental health examinations, she does not address the normal findings also referenced by the ALJ. Without providing that analysis, Claimant does not meet her burden to show the record compels a different result than that reached by the ALJ. The fact that there is more than one way to look at a record like this—that reasonable minds might differ over the result—shows why the court is not permitted to reweigh evidence on substantial evidence review. *See*, *e.g.*, *Chavez v. O'Malley*, 96 F.4th 1016, 10121 (7th Cir. 2024).

Similarly, although Claimant cites case law for the proposition that the ability to engage in activities of daily living is different than the ability to perform the tasks of a full-time job, that again does not mean the ALJ was not entitled to consider Claimant's ability to engage in activities in assessing the limiting effect of her impairments including her use of an iPad to draw, reading, selling items on the internet, caring for her two children as well as pets, doing some household chores although Claimant sometimes fails to complete one task before moving on to another, counting change, gardening, painting, video chats, driving, attending medical appointments alone, and her attendance and participation at the hearing. (R.22, R. 29). To the contrary, consideration of a claimant's ability to engage in daily activities in weighing the severity of claimed symptoms is clearly allowed under the regulations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (instructing ALJs to consider "daily activities" as one relevant factor in determining the severity of a claimant's symptoms); *see*, *e.g.*, *Pufahl v. Bisignano*, 142 F.4th 446, 459 (7th Cir. 2025) ("the ALJ considered Ms. Pufahl's daily activities as a factor alongside numerous other considerations in evaluating her subjective statements and ultimately finding her statements to be not entirely consistent with the evidence"); *Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022) ("The ALJ did not err in considering . . . self-reported daily activities . . . Those activities were appropriately determined to be

inconsistent with the severity and limitations of her claimed symptoms."). In the Court's view, the ALJ did not, as Claimant suggests, conflate her abilities to engage in daily activities with the ability to perform full-time work, but rather appropriately weighed those abilities in assessing whether Claimant's "activities of daily living reflect a greater ability to function." (R.29).

Claimant also criticizes the ALJ for "playing doctor" by relying on her history of conservative mental health treatment and some success with medication while not explaining what additional treatment, in the ALJ's view, would have been indicative of more limiting symptoms. Motion [ECF No. 18] at 14. Claimant says the ALJ does not explain how Claimant's treatment record translates into the ability to sustain work-related tasks on a full-time basis. *Id.* The ALJ, however, made numerous references to record evidence of Claimant's conservative treatment for mental impairments as well as the effectiveness of Claimant's medication treatment in controlling her pain and relieving her mental health symptoms. (*See*, *e.g.*, R.25-29 (July 2021 report that Claimant's headaches were controlled with medication); (November 2021 physical therapy report of improvement with pain and more feeling in hands with medication); (December 2021 physical therapy records showing progression towards therapy goals and reduced pain); ("the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms"); (psychological consultative examination in December 2021 "noted the claimant had some benefit of anxiety relief from psychotropic medication"); (October 2021 treatment records "reflect the claimant reported that her new Adderall dosage 'helped a lot' to clear her 'brain fog' . . . "also reported she had less pain and that she felt like her 'brain is healing with the physical pain'"); (reporting in December 2021 "that Lyrica helped take the edge off of her anxiety and allowed her to be able to draw and spend time reading" and "her 'brain fog was lifting'"); (reporting in January 2022 that Vitamin D helped her feel better); (at emergency department visit in January 2023 where Claimant

complained of side effects from depression medicine but was intoxicated, on reexamination Claimant "was calm, smiley, and talkative and did not feel a need for emergent psychiatric admission or social work evaluation"); (Claimant's "treatment has been conservative treatment including therapy and medication management without psychiatric hospitalizations. The claimant reported some success with medication and even reported being stable in November 2022.").

While Claimant may weigh the record evidence regarding her treatment differently, she does not explain why the ALJ's conclusion was unreasonable. Moreover, "the Seventh Circuit has held that it is reasonable for an ALJ to consider a claimant's conservative treatment." *See Anthony G. v. Saul*, 2020 WL 439964, at *10 (N.D. Ill. Jan. 28, 2020) (citing *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009)); *Carolyn R. v. Kijakazi*, 2023 WL 5748198, at *4–5 (N.D. Ill. Sept. 6, 2023) (collecting cases). Accordingly, the ALJ did not err in considering Claimant's treatment history in assessing her mental RFC.

Viewing the record as a whole, the Court finds that the ALJ adequately built a logical bridge from the evidence to his conclusions as to the appropriate restrictions for the mental RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (holding that an RFC providing for routine tasks and limited social interactions adequately accommodated moderate deficits in concentration, persistence, or pace). In the Court's view, the RFC adequately accounted for Claimant's moderate limitations in concentration, persistence, and pace and that finding is supported by substantial evidence. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (recognizing that courts "apply a very deferential standard of review to the ALJ's decision"); *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (explaining that substantial evidence is "not a high threshold").

### C. The ALJ Adequately Supported the Rejection of Claimant's Treating Source Opinions.

Claimant's final argument is that the ALJ did not explain or support the rejection of Claimant's treating source opinions that she was precluded from full-time work as a result of her combined impairments. Motion [ECF No. 18] at 14-15. Claimant's arguments are based in her disagreement with the ALJ's view of the record evidence regarding Claimant's mental health, which the Court addresses above. *See id.* (arguing ALJ "falsely characterized" mental health status examinations as generally normal). As discussed above, the ALJ explained his views on the record evidence and why, in his review of the record, it did not support greater restrictions than set forth in the RFC. The Court understands that the ALJ relied on this interpretation of the evidence and, in doing so, rejected the persuasiveness of certain treater opinions that found much more significant restrictions. But that is the ALJ's purview in weighing and reviewing the record evidence; though there may be disagreement within the record, there is a basis and logical bridge to support his decision. *Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's reasoning and citations in one portion of the decision may support conclusions in another portion of the decision); *see also Jarnutowski*, 48 F.4th at 773. For all these reasons, and absent any additional argument from Claimant as to why the treating source opinions should have been found more persuasive than the other record evidence the ALJ reviewed, considered, and weighed, the Court finds the ALJ did not err in finding the treating source opinions to be inconsistent with the overall record evidence regarding the extent of Claimant's functional limitations.[4]

[4] In addition, although Claimant says "given the consistency among the treating source opinions, the ALJ's wholesale rejection of those opinions remains unexplained and unsupported," but Claimant does not address the ALJ's concern about the credibility of the opinion when Dr. Munoz provided the identical opinion as Dr. Zak by simply crossing his name off and replacing it with his own. (R.30-31). This fact is not disputed or otherwise explained by Claimant.

## CONCLUSION

Accordingly, for all the reasons set forth above, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 18] is denied and Commissioner's Motion for Summary Judgment [ECF No. 22] is granted.

It is so ordered.

Karyn L. Bass Ehler
United States Magistrate Judge

Dated: August 14, 2026